America Incorporated at all. Good morning, Your Honors. May it please the Court, my name is Ethan Stiles, and I'm here on behalf of Mr. Craig Williams, the plaintiff in the underlying case. And we are here today because the trial court denied him his opportunity to present a case to a jury that the defendant's Ryobi P200 drill caused a fire that caused his barn to burn down on a cranberry bog in South Yarmouth. But the trial court needs to be certain that there is no case to try before it can bang down its proverbial gavel and say to the plaintiff, no trial for you. And in this case, I would suggest that the record shows that the issues in the case were far from being certain to be decided against the plaintiff. Now, the first issue is the identity of the drill in question. And I would suggest that the record indicates that the defendants have, in three different ways, acknowledged what the identity of this drill is. First, we have the fact that there is evidence, the plaintiff's receipt from Home Depot where he bought the drill. And that's referred to and discussed in his deposition testimony, parts of which are in the record. So we know that a receipt exists, and the court can reasonably infer that if one has a receipt from a major retail like Home Depot, that there's information on that to identify the product he purchased. Now, if there are questions of how many drills did he purchase on one day, whether he remembers the date on the receipt or what he did that day, those questions are for fact for a jury to decide. Whether his statement that I bought two of the same drills is credible or not. Now, there is evidence that he bought two drills, one that he kept in his house and one that he kept in the barn. And that brings me to my next point, is that after the fire, the insurance company- Were they the same types of drills? Yes, that's our contention. And their evidence, which I've just discussed with the receipt. After the fire, the fire investigators from Business Insurer came and took the drill. And they took photos of that. And on that basis and on the allegations of the complaint that it was the model P200, the quote was 18-volt Ryobi drill, the defendants provided the design documents, discovery that he had requested early on in the litigation. And we have that because the defendants stayed so much in opposition when he wanted the discovery for the other drills, which I'll talk about a little bit later. And last- I'm sorry. You know, respectfully, half the problem here is that you didn't conduct a timely discovery. Well, I would suggest- there is an issue of discovery, Your Honor. Yes, there is. Yes, and- You never request the production of documents. Well, my predecessor did request documents. He secured an extension to the discovery deadline. He requested the documents, but the defendants- Orally. I'm sorry? Orally. Well, he did so. He tried to serve a subpoena on the defendants in preparation of a deposition of the product safety manager, Mr. Winchester. But the defendants, first of all, forced him to go and conduct this deposition in South Carolina, refused the documents that he requested, which were similar drills, and would have limited his deposition to the drill in question, and would undoubtedly object if he tried to go outside the scope of his- Have folks stopped conducting video depositions? Yeah. I used to do that. I believe it's so, but I believe the defendants agreed to produce Mr. Winchester in South Carolina. But even so, I mean, without the documents that my predecessor had requested, the deposition would have been meaningless, because his theory had expanded, as discovery can provide, as the case can continue, that now this issue of a switch recall, that this earlier drill, the HP 1802M, that's the model of the drill, a cordless drill very similar to the Ryobi P200, both Ryobi products, this one was recalled because of a faulty switch assembly. And we have the Ryobi P200 and another drill called the SA 1802, which is probably a cosmetic update of the HP 1802. And those switches, it was evidence that the switch assemblies for those products, but nothing else, was also recalled. So he asked informally, then formally, I want these materials, and they said no. And they said no, and they, with objections, but I would suggest do not rise to this, were not proper. Because it is not incumbent upon a plaintiff when he wants to request documents of similar products to have to show an expert to show the similarities. I mean, we're talking about cordless drills. We're not talking about, you know, complex, large, complex machinery like a motorcycle or a clothes dryer. So in that sense, I would suggest that the defendants knew, you know, knew that he was on to something and tried to stonewall him at every turn to prevent him from getting the materials that he wanted and the discovery that he requested. And he continued to request discovery up until summary judgment was granted. There were parallel tracks. He was trying to enforce his motion to compel and defend against the summary judgment motion. And had he received the documents that he requested, undoubtedly I believe this case would have taken a different course. Now, even so, I, you know, there is, he does have expert evidence here that he has the trooper's report that eliminated, you know, said the cause of the fire was electrical in nature. It occurred in this area where the drill and the charger were located in this barn. And the cause and location and nothing else was there that would have caused it. No other electrical had shown any signs of fault. So he has enough there to get him over the hurdle to be able to show to a jury, to say, rely on your common sense and say, here's the product, here's the thing, it catches fire, it caused the barn to burn down. You know, there is negligence here. And there is strict liability under a warranty of merchantability theory. And so he can ask a jury, you know, do these things happen? You know, is this fair? Do these things happen without negligence? Is this fair? And I would suggest that a jury, using its common sense, could say, yes, this product was defective, this product was liable. And there is case law that says he does not need to show the specific cause of liability because, in many cases, the product is destroyed. He cannot destroy it. He cannot show it. So in that sense, otherwise it would give a perverse incentive to manufacturers to make their products even more dangerous so they can cause bigger fires. I would, you know, so I would suggest that the district court essentially, you know, no further discovery for you, no chance to try a case. And I would suggest that under this court's jurisprudence, and I would cite particularly the Esposito v. Home Depot case, that's a 2009 case for the circuit, you know, the court has said that under similar circumstances as in this case, that that remedy was too harsh. And the plaintiff here really wasn't responsible for much of the delay. His client is a cranberry grower, grows cranberries. He's a man of limited resources. The defendants have unlimited resources, Tektronix, Home Depot. They're huge companies. They can supply whatever experts they need whenever they want them. They can fly experts up to Massachusetts. They did in this case to investigate the cause of fire, as they did. You know, they can hire the best law firm in town, and they can comfortably remove to this court. My predecessor did not choose this court. He filed in the superior court in Barnesville County. So with that, I would suggest that ultimately Mr. Williams wants his day in court, and I would respectfully request that this court grant him that opportunity. If there are no further questions, I will rest on the brief. Thank you. May it please the Court. My name is Tony Agudelo. I represent the defendants in this case. The lower court granted summary judgment on three independent grounds, and each one of those was absolutely correct. In addition, the lower court also denied as moot the plaintiff's motion to compel, and that was also absolutely correct. The first element of the plaintiff's case that he was unable to provide enough information for the summary judgment was on the identification of the product. In the lower court, the plaintiff relied on three documents. He relied on a CPSC report, the Home Depot receipt that the plaintiff's counsel has discussed today, and also notes that were provided by the defendant in the course of the discovery. The first document, the CPSC document, the plaintiff makes no argument in his brief at all that there was any information there that would get him over the hump for summary judgment. So I believe anything, any type of argument there has been waived and he didn't raise it again in the oral argument. The receipt also was never put into the record for the summary judgment, so we don't know what the receipt says. There's no evidence there. So the plaintiff is left with these notes that he's got. And the lower court said on two ways that, one, the notes are not authenticated. They're not accompanied by any affidavit, and so they're not admissible as part of the record, and I believe that the court was correct on that. But even if you got to the point and you say, okay, well, let's look at the notes anyway. What do the notes say? The notes are unclear. They've got a lot of different models, numbers all over the place. It is certainly not clear that we are talking about the P-200 drill that was involved in the fire. Indeed, the only way we got to the P-200 in the notes at all is that the plaintiff had provided some photos of an exemplar drill, and based on that there was an indication that there may have been a P-200 drill involved. But at most you've got a mere scintilla of evidence there as to what the product was involved. And we also have a problem here that the plaintiff's argument as to which product is involved has really been a moving target. In his complaint, he complains it's the charger that overheats. But in his motion to compel, he says, well, no, it's not the charger. It's the drill. There's a switch on the drill that's the problem. When he wants to rely on Trooper Peters in his investigation, he says, it's the battery. So we don't even know, are we dealing with the drill? Are we dealing with the charger? Are we dealing with the battery? And the lower court was certainly correct in saying there's not enough evidence as to what the product is to get over the summary judgment hurdle. The second independent grounds that the court granted summary judgment on was that there was no expert evidence of a defect in the product. And, again, we've got the problem of the moving target. Well, which product are we talking about? All three of them, the battery charger, the battery, and the drill, they're complex products. They have many components. And it certainly isn't common on the plaintiff to have some sort of expert testimony that says, this is a defect in the product. It's either a design defect or it's a manufacturing defect. It's certainly beyond what the average juror would know. And the plaintiff offered no evidence at all as to any defect. The plaintiff himself said, never had any problems with the drill, always worked fine. When he relied on Trooper Peters, if you look at Trooper Peters' report, he says, if these products failed, but I would need more forensic examination to get there. He certainly isn't offering any opinion that any of these products were defective. And then the plaintiff hired another expert, and I'm not sure whether it's pronounced Marchia or Marchica because it's spelled differently in the record. But he hasn't examined any of the evidence. He hasn't issued any report. And what the court said was notable about Mr. Marchica, where Judge Casper said, it cannot be the case that Williams' bald assertion that an unknown opinion, based on a deposition that has not yet occurred, that will focus on the recall of another product, is sufficient to defeat summary judgment. And in essence, what the plaintiff was saying, well, we need to have this deposition. So Mr. Marchica can have some evidence on which to make an opinion. And the court said that that's just not sufficient. The third basis on which ‑‑ As to that point, counsel, can I ask a case management question? I'm a little confused about what appears to me to be the case. There was a discovery motion hearing in front of a magistrate, and there isn't a transcript of that. But a month or so later, the district court held the summary judgment hearing and ruled on discovery motions. What was pending in front of the magistrate? I think what happened, Your Honor, and trying to reconstruct it myself, but in essence, the discovery deadline had passed. And there had been a change in judges. It was originally assigned to Judge Toro. But when the discovery period ended, there was a status conference at which the parties came in. And the plaintiff said, look, I'm not done with discovery. I haven't had a chance to do X, Y, or Z. So the court gave the plaintiff another month to do that. And then even in that month, the plaintiff decided not to take the deposition to Mr. Winchester, which was offered twice, and then did propound some discovery, but it was in the form of a subpoena emailed and mailed to my office. And we pointed out that both the form and the substance were deficient. So if that adequately answers your question, Your Honor, I'll move on. The third independent ground was that there's no evidence as to causation here, that any defect in any of the products actually caused this fire. And causation is an essential element of both of the plaintiff's claims, the negligence claim and the breach of warranty claim. A jury is not allowed to speculate as to cause. And like with the products, we're dealing with a complex causation issue. This is a large-sized barn that suffers a fire, and there are a number of electrical devices present in the barn. There are electrical heaters, fluorescent lights, overhead lights, electrical outlets, a well pump, an air compressor, bandsaw. Counselor, excuse me one second. Sure. Was the plaintiff's theory that this was a product defect or a design defect? In other words, was there a theory that there was a problem with this particular item sold or with the design of this particular model? As I understand it, Your Honor, it was a design defect claim rather than a manufacturing defect claim. But again, that was somewhat amorphous. But that was my understanding, that it would be a design defect claim, hence why they were looking for design drawings. And I don't know, given the state of the evidence, whether they even could have made out a manufacturing defect claim. So the only evidence which was the end result was it was inconclusive, was the report done by the inspector who was not looking to see if it was a design defect. If I understand it. Right. I mean, I can't say obviously what the... But to see if the causation with respect to that particular drill. Right. Well, there was, the trooper investigated it, and then the plaintiff's insurance company had a forensic engineer come and investigate it. And all of the individuals who looked at it, none of them could say, well, it was caused by the drill, it was caused by the charge, it was caused by the battery, or that there was any defect. They all just said it's undetermined. We can't determine what the cause is. And plaintiffs even in their briefs say, you know, the two experts that we had access to, Mr. Raines and Trooper Peters, both of them found that the cause was undetermined.  And actually, some of them had even more helpful things for the defendant to say, but at baseline, that was their bottom line conclusion. So this is not a case where the plaintiff can rely on any kind of race. It's a locator argument. The Massachusetts law is clear that in similar cases, especially the Enrich case. Just to follow on that question, you're probably not as well positioned to answer this in some ways as your opponent would be. But is there any affirmative evidence at all of a design defect? Is it just the recall? Well, the recall has very problematic information. It's a different product. Aside from the recall, is there anything in the record that speaks to a problem with the design of the drill? None at all, Your Honor. None. And the plaintiff is trying to make a connection between this, the P-200 drill, and another drill that had been recalled years before. And to support that, he prints out some information from a website unrelated to the defendant, which is obviously clearly hearsay and unauthenticated. But when you look at it, it will show that the switch on the P-200 drill was a different switch than the one on the recalled drill. So there's simply no connection there.